UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM C.,

                                                                 DECISION AND ORDER

                Plaintiff,

                                                                  19-CV-1341L

             v.

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.
_____

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

      On June 17, 2016, plaintiff, then forty-one years old, filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging disability as of December 21, 2013. (Administrative Transcript, Dkt. #6 at 15). His applications were initially denied. Plaintiff requested a hearing, which was held October 26, 2018 before Administrative Law Judge ("ALJ") Maria Herrero-Jaarsma. The ALJ issued an unfavorable decision on November 16, 2018. (Dkt. #6 at 15-30). That decision became the final decision of the Commissioner when the Appeals Council denied review on August 21, 2019. (Dkt. #6 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for the calculation and payment of benefits or in the alternative for further proceedings (Dkt. #9), and the Commissioner has cross moved (Dkt. #11) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period. These include treatment notes for cervical spine intervertebral disorder with radiculopathy, lumbar spine degenerative disc disease with radiculopathy and bilateral hip pain, major depressive disorder, anxiety disorder with panic disorder and agoraphobia, and somatic disorder affecting physical issues. The ALJ determined that these conditions together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 18).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that plaintiff requires a cane for ambulation. He can alternate between sitting and standing once every hour for 5 minutes, while remaining on task. He can engage in no more than occasional pushing, pulling, balancing on level surfaces, stooping (bending at the waist), and climbing of ramps or stairs. He can never climb ladders or scaffolds,

and can never kneel, crouch or crawl. He can engage in frequent, but not constant, rotation, flexion and extension of the neck. He can never be exposed to unprotected heights, moving machinery or moving mechanical parts. He also requires work in a low-stress environment, defined as one with no supervisory responsibilities, no work at a production rate pace, and no fast-moving assembly line-type work. He can perform simple, routine tasks with few, if any, changes in work routines, processes or settings. He can have no more than occasional contact with supervisors and coworkers, and no more than incidental contact with the public. Finally, plaintiff is limited to work that can be performed independently, although coworkers may be in the same general area. (Dkt. #6 at 21).

At the hearing, vocational expert Jennifer Dizon testified that a hypothetical individual with this RFC could not return to plaintiff's past relevant work as a machine operator, but could perform the representative light positions of marking clerk, mailroom clerk, and office helper. (Dkt. #6 at 29). The ALJ accordingly found plaintiff not disabled.

### I.    The Medical Opinions of Record

In assessing plaintiff's RFC, the ALJ's decision specifically discussed and weighed each of the medical opinions of record.

First, the ALJ assigned "little" weight to the August 25, 2016 opinion of plaintiff's treating internist, Dr. Alexander Corbett, and "partial" weight to a second opinion authored by Dr. Corbett on September 20, 2018. (Dkt. #6 at 24-26, 457-67, 1523-24).

Dr. Corbett's initial opinion diagnosed plaintiff with: low back pain with spasms, limited range of motion, and balance difficulties; neck pain, radiating into plaintiff's arms; weakness of the right arm; hearing loss; and anxiety. The resulting limitations Dr. Corbett described included, among other things, never working in noisy environments, standing and/or walking for no more

than 2 hours in an 8-hour workday, never balancing, stooping, kneeling or crawling, and limited ability to reach in all directions, handle, finger or feel, particularly with the right arm. (Dkt. #6 at 457-67). The ALJ rejected the handling and reaching restrictions as unsupported by the record, and downgraded the remainder of the limitations described by Dr. Corbett, for reasons not stated. (Dkt. #6 at 24, 27). The ALJ gave the opinion "little" weight, describing it as "contrast[ing] sharply with the other evidence of record," including unspecified progress notes from Dr. Corbett, and Dr. Corbett's subsequent assessment, which the ALJ characterized as "revis[ing]" and superseding the August 25, 2016 opinion. (Dkt. #6 at 27).

Dr. Corbett's later opinion suggested only slightly less-onerous lifting and carrying limitations, roughly consistent with light work, but specified that plaintiff could only sit or stand for up to 4 hours in an 8-hour work day, and required a break after 45 minutes of standing. Dr. Corbett further noted that plaintiff's hypervigilance and somatic symptoms, as well as his pain symptoms, would be "intermittently disabling" and would occasionally interfere with his attention and concentration on the job. Dr. Corbett further indicated that plaintiff's pain would "significantly impair" his daily functioning and cause him to miss more than four days of work per month.

The ALJ found the "sitting, standing, walking and postural" limitations mentioned by Dr. Corbett to be "relatively consistent with Dr. Corbett's progress notes," but rejected Dr. Corbett's opinion concerning plaintiff's difficulties with attention and concentration as "without substantiation," given that Dr. Corbett was allegedly not treating plaintiff for his mental health diagnoses. (Dkt. #6 at 27).

On July 11, 2018, plaintiff's treating psychiatrist, Dr. Tulio Ortega, rendered an opinion concerning plaintiff's mental limitations. (Dkt. #6 at 1540-42). Dr. Ortega opined that, in addition to some milder limitations, plaintiff was "seriously limited" in the ability to maintain attention for

4

two-hour segments, work in coordination with or proximity to others without undue distractions, complete a normal workday or workweek without interruption, perform at a consistent pace without unreasonable rest periods, respond appropriately to changes in a routine work setting, and deal with normal work stress. *Id*. The ALJ gave Dr. Ortega's opinion only "partial" weight, on the basis that the limitations he described conflicted with the Global Assessment of Functioning score of 65 (suggestive of mild limitations) that Dr. Ortega had assigned at the time of the assessment. (Dkt. #6 at 26, 1540).

On October 6, 2016, plaintiff was examined by consulting psychologist Dr. Gregory Fabiano. (Dkt. #6 at 777-81). Dr. Fabiano concluded that plaintiff has mild limitations in relating adequately to others, and moderate limitations with respect to dealing with stress. The ALJ gave Dr. Fabiano's opinion only "partial" weight, on the grounds that his examination took place two years prior to the ALJ's decision, and that documents were added to the file after the examination that were not part of Dr. Fabiano's review. (Dkt. #6 at 27).

Initially, plaintiff argues that the ALJ erred in failing to give "good reasons" for discounting the opinions of treating physicians Dr. Corbett and Dr. Ortega. The Court agrees.

In general, the opinion of a claimant's treating physician as to the nature and severity of his or her impairments is entitled to "'controlling weight' so long as it 'is well-supported . . . and is not inconsistent with the other substantial evidence in the case record.'" *Gough v. Saul*, 2020 U.S. App. LEXIS 949 at \*2-\*3 (2d Cir. 2020) (unpublished opinion) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). *See also Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). In determining whether to give controlling weight to the opinion of a treating physician, factors to be considered by the ALJ include: (1) the nature and extent of the treatment relationship; (2) the

evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c).

In addition, the ALJ must articulate her reasons for assigning the weight she gives to a treating physician's opinion. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and to give good reasons for declining to grant controlling weight is reversible error. *Id.*, 177 F.3d 128 at 134.

Here, although the ALJ identified plaintiff's treating physicians as such and took note of their areas of specialty and the longitudinal nature of their treating relationships with plaintiff, the ALJ's stated reasons for declining to credit their opinions were inadequate and inconsistent.

First, the ALJ's contention that Dr. Corbett's initial, 2016 opinion was contradicted by his progress notes did not cite to any of those notes. Indeed, a casual inspection of Dr. Corbett's treatment records shows repeated objective clinical findings that would appear to support, rather than undermine, the limitations described by Dr. Corbett, including pain and decreased range of motion in the neck, right arm and lumbar spine, reduced deep tendon reflexes in both arms (greater in the right arm), reduced grip strength, and lumbar spinal spasms. The ALJ's conclusory finding that these progress notes "contrasted sharply" with other evidence is simply not well-supported.

Furthermore, the ALJ's rejection of Dr. Corbett's 2016 opinion on the basis that it was somehow "superseded" by his 2018 opinion was improper. While a medical opinion may be superseded by additional material in the record where subsequent evidence differs materially from it so significantly as to "raise doubts" as to its reliability, *Warrick v. Saul*, 2020 U.S. Dist. LEXIS 87755 at *27 (D.Conn.2020); *Sabrina L. v. Berryhill*, 2018 U.S. Dist. LEXIS 210423 at *33-*34 (W.D.N.Y. 2018), Dr. Corbett's opinions were not appreciably contradictory. While the later

opinion indicated improvement in some areas of functioning when compared with his initial opinion, it did nothing to undermine the initial opinion's probative value as an indicator of plaintiff's RFC at the time it was authored.

With respect to Dr. Corbett's 2018 opinion, the ALJ found the "sitting standing, walking and postural limitations [including a limitation to no more than 4 hours of standing or walking, with a break after every 45 minutes of standing, to be] relatively consistent with Dr. Corbett's progress notes," but nonetheless rejected those limitations without explanation, formulating an RFC for light work, which requires standing or walking for up to 6 hours in an 8-hour workday. This, too, is reversible error. *See, e.g.*, *Garcia v. Berryhill*, 2018 U.S. Dist. LEXIS 194203 at *31 (S.D.N.Y. 2018) ("the ALJ erred by failing – without explanation – to incorporate the limitations described by [a physician whose opinion was allegedly credited]" into plaintiff's RFC); *Raymer v. Colvin*, 2015 U.S. Dist. LEXIS 112218 at *20 (W.D.N.Y. 2015) (remand is appropriate where ALJ fails to explain why portions of a credited opinion were not adopted into the ALJ's RFC finding).

The ALJ's rejection of Dr. Corbett's opinion concerning plaintiff's nonexertional limitations was also insufficiently explained. Although the ALJ stated that the limitations posed by plaintiff's somatic disorder, anxiety and depression were not within Dr. Corbett's expertise, Dr. Corbett's opinion concerning plaintiff's ability to attend and concentrate was not based solely on plaintiff's mental health diagnoses, but upon the debilitating effects of plaintiff's pain, which Dr. Corbett actively treated. If the ALJ was unable to determine to what extent plaintiff's pain, rather than his anxiety, contributed to his limitations in attention and concentration and attending work regularly, the ALJ should have recontacted Dr. Corbett for clarification.

Similarly, the ALJ did not provide good reasons for declining to credit Dr. Ortega's opinion. Dr. Ortega was plaintiff's treating psychiatrist, with a longitudinal treatment relationship

7

that began in 2012. (Dkt. #6 at 193, 1525). The ALJ's only reasons for rejecting that opinion were that Dr. Ortega had assigned plaintiff a GFA score of 65 at the time of his 2018 assessment, and that plaintiff's mental impairments were allegedly stable with treatment. (Dkt. #6 at 24).

The ALJ's reliance on the GAF score assigned by Dr. Ortega was misplaced. It is well-settled that GFA scores do not furnish "good reasons" for discounting a treating physician's opinion, and that "[u]nless [a] clinician explains the reasons behind his or her GAF rating, and the period to which the GAF rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Estrella*, 925 F.3d 90 at 97 (GAF scores do not provide "good reasons" for assigning little weight to a treating physician's opinion). *See also Haddad v. Commissioner*, 2020 U.S. Dist. LEXIS 21752 at *15 (W.D.N.Y. 2020)("the GAF scale does not correlate with the severity requirements in the Commissioner's regulations"); *Narvaez v. Commissioner*, 2019 U.S. Dist. LEXIS 156922 at *35(S.D.N.Y.2019)("[a] GAF score, standing alone, is not a good reason to assign little weight to a treating physician's opinion").

Here, the GAF score assigned by Dr. Ortega was not explained, and was provided on a form that asked Dr. Ortega simply to list the "highest" GAF score plaintiff had achieved at any point over the preceding year (that is, July 2017-July 2018, a period roughly four years after plaintiff's alleged disability onset date), as well as the GAF score assigned at the time of the assessment. Neither of these provided a "longitudinal" view of plaintiff's mental limitations. (Dkt. #6 at 1525). Moreover, the ALJ's conclusory finding that plaintiff's "mental impairments were stable with the use of medications and care" is unsupported by any citation to the evidence of record, but instead was followed by a discussion of plaintiff's *physical therapy* progress notes. (Dkt. #6 at 24).

Because the ALJ did not provide "good reasons" for declining to credit any of the medical sources of record, and formulated an RFC that was at odds even with those portions of the opinions the ALJ found to be well-supported (e.g., the exertional and postural limitations contained in Dr. Corbett's second opinion), the ALJ's RFC finding was not supported by substantial evidence. As such, remand is necessary for the ALJ to reassess the medical opinions of record, and/or to obtain additional opinion evidence if and as appropriate.

Upon review of the record, I find that this is not a case "where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose." *Martinez v. Barnhart*, 262 F. Supp. 2d 40, 49 (W.D.N.Y.2003). As such, remand for further proceedings – rather than for calculation and payment of benefits – is the appropriate remedy.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision (Dkt. #9) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is denied. The ALJ's decision is reversed and remanded, and the ALJ is instructed to render a new decision which discusses all of the medical opinion evidence of record with respect to plaintiff's physical and mental limitations.

Such discussion should include reevaluation of the opinions of plaintiff's treating and examining physicians (to include re-contacting those physicians for clarification and an update concerning plaintiff's condition, with due deference to the treating physician rule and a detailed

9

discussion of all of the factors relevant to the consideration and weighing of medical opinion evidence.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        December 1, 2020.